UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUETTS

Docket No.: 3:20CV30177-KAR

REY L. AUGUSTINE, JR.,
Plaintiff,

v.

CITY OF CHICOPEE, OFFICER TIMOTHY BRODEUR, officially and individually;
OFFICER MICKEY DUMAIS, officially and individually; OFFICER JOSEPH
BRUNELLE, officially and individually; OFFICER FRANK MCQUAID, officially and
individually; POLICE CHIEF WILLIAM JEBB; officially and individually; and
JOHN/JANE DOES 1-10, officially and individually.
Defendants.

**MEMORANDUM OF LAW OF THE DEFENDANTS,
CITY OF CHICOPEE, WILLIAM JEBB, TIMOTHY BRODEUR,
MICKEY DUMAIS, and FRANK MCQUAID,
IN SUPPORT OF THEIR MOTION TO DISMISS**

*1.  Introduction.*

The City of Chicopee, its Police Chief, William Jebb, and its police officers

Timothy Brodeur, Mickey Dumais and Frank McQuaid, the defendants in this matter,

have moved, pursuant to Fed. R. Civ. P. 12(b)(6), that the court dismiss several of the

claims asserted against them.  Specifically,

a.  Chief Jebb and Officers Timothy Brodeur, Mickey Dumais and Frank

McQuaid seek dismissal of all claims asserted against them in their official

capacities;

b.  Chief Jebb seek dismissal of the claims against him of Count I, asserting

claims for excessive force pursuant to 42 U.S.C., § 1983;

c.      Officers Brodeur, Dumais, McQuaid and Brunelle, and Chief Jebb seek

dismissal of Count II, asserting civil conspiracy claims asserted against them

pursuant to 42 U.S.C., § 1983;

d.      Chief Jebb seeks dismissal of the § 1983 claims for deliberate indifference

and custom and practice and failure to train and supervise, being all of the claims

asserted against him in Counts III and VI; and

e.      Chicopee seeks dismissal of the § 1983 *Monell* claims asserted against it,

being all of the claims asserted against it in Counts IV and V.

For the reasons that follow, the defendants maintain that their respective motions should

be allowed.

## 2.   *Relevant Circumstances Alleged.*

This is an action brought pursuant to 42 U.S.C., § 1983, arising out of an incident

of alleged police brutality occurring on November 16, 2017.  In his complaint, filed on

November 13, 2020, the plaintiff, Rey L. Augustine, Jr., sets forth the following pertinent

facts.  On November 16, 2017, the plaintiff was involved in an altercation with two

individuals at the Hu Ke Lau, a restaurant in Chicopee within walking distance of the

trailer park where he lived.  In response to this altercation, the Chicopee Police were

called by Hu Ke Lau staff.  The defendants, Chicopee Police Officers Timothy Brodeur,

Mickey Dumais, Frank McQuaid, and Joseph Brunelle, responded to that call.

(Complaint at ¶ 13 - 19).

Officers Brodeur and Dumais located and stopped the plaintiff as he was walking

into the trailer park.  Officers McQuaid and Brunelle then arrived on scene from the Hu

Ke Lau.  Officer Brodeur formed the opinion that the plaintiff "was unable to care for himself due to his current state."[1]  (Complaint at ¶ 20 - 26).

Brodeur and Dumais approached the plaintiff and, using the arm bar takedown method, physically forced the plaintiff to the ground, causing injury to his face.  The plaintiff was then held on the ground by Officers Brodeur, Dumais, McQuaid, and Brunell while Officers Brodeur and Dumais handcuffed the plaintiff.  Officers Brodeur, Dumais, McQuaid, and Brunell the took the plaintiff to the cruiser, where he was slammed against the back door of the cruiser.  The plaintiff was searched for weapons and and no weapons were found.  (Complaint at ¶ 26 - 34).

While handcuffed and pushed up against the cruiser, Officers Brodeur and Dumais physically shoved the plaintiff, causing him to fall face first on the ground.  Because his hands were in cuffs the plaintiff, was unable to break the fall.  Because of his resulting injuries, he was transported to Holyoke Medical Center for treatment.  (Complaint at ¶ 35 - 37).  As a result of this incident, the plaintiff was arraigned and charged on May 4, 2018 with disorderly conduct, assault and battery on a police officer (two counts) and resisting arrest. (Complaint at ¶ 47).

From these facts, the plaintiff claims that, in the course of his arrest, he was wrongfully assaulted by Officers Brodeur, Dumais, McQuaid, and Brunelle.[2]  The plaintiff further claims that the defendants City of Chicopee, and Chicopee Police Chief

---

[1]   The plaintiff did not specify the pre arrest "state" he was in, whether due to injury he sustained in the altercation at the Hu Ke Lau, or intoxication, or both.

[2]   Officer Brunelle is separately represented and has filed his own motion to dismiss the claim against him.

3

William Jebb, are jointly and severally liable for violation the plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, and under the Constitution of the Commonwealth of Massachusetts, and for all injuries he sustained as a result of the constitutional violations.[3] The plaintiff further alleges that the acts of Officers Brodeur, Dumais, McQuaid, and Brunelle were so flagrant and widespread prior to the incident in question that Chief Jebb and Chicopee "had actual knowledge of their illegal practices and customs, and chose, with deliberate, reckless, and callous indifference to stop *(sic.)* their illegal practices as to depriving others of their guarantee to these constitutional rights." (Complaint ¶ 1).

### 3.  *Specific Claims for Relief.*

The plaintiff has alleged eleven theories of recovery. In Count I, the plaintiff seeks recovery under 42 U.S.C., § 1983, claiming that Officers Brodeur, Dumais, McQuaid and Brunelle used excessive force during and after his arrest. The plaintiff also alleges that the unspecified actions and inactions of Chief Jebb were done deliberately, recklessly, and with callous indifference to the constitutional rights of others.

In Count II, the plaintiff seeks recovery under 42 U.S.C., § 1983 for a civil conspiracy, claiming that Officers Brodeur, Dumais, McQuaid and Brunelle, and Chief Jebb, "conspired among themselves to violate Plaintiffs rights under the constitution of the United States and Massachusetts. The plaintiff alleges that "[i]n furtherance of this conspiracy and cover-up, Defendants distorted facts, lied about the events that took place,

---

[3]   The plaintiff has also named John and Jane Does, No. 1-10, who he alleges are unidentified Chicopee Police Officers who were involved in the beating and conspiracy to cover up thereafter.

and created charges against Plaintiff that would assist them in covering up the deprivation of constitutionally recognized rights afforded to every United States Citizen." (Complaint at ¶ 54).

In Count III, the plaintiff seeks recovery against Chief Jebb under 42 U.S.C., § 1983, claiming without specificity that "by his action, inaction, and deliberate indifference" Chief Jebb "knowingly, willfully, and intentionally allowed a policy and custom to exist" which resulted in violation of the plaintiff's constitutional rights. (Complaint at ¶ 58). The plaintiff also alleges that prior to the arrest in question Chief Jebb "failed to properly train Defendants Brodeur, Dumais, McQuaid, and Brunelle." (Complaint at ¶ 61).

In Count IV, the plaintiff seeks recovery against the City of Chicopee under 42 U.S.C., § 1983, claiming, again without specificity, that "[b]y its action, inaction, and deliberate indifference" Chicopee "knowingly, willfully, and intentionally allowed a policy and custom to restrain arrestees" which resulted in violations of the plaintiffs constitutional rights. (Complaint at ¶ 64).

In Count V, the plaintiff seeks recovery against the City of Chicopee under 42 U.S.C., § 1983, claiming, again without specificity, that "[t]he City of Chicopee's failure of *(sic.)* ensuring the proper functioning of the police department and failure to ensure that all officers of the police department are properly supervised and trained to interact with members of the public, as a municipal corporation, resulted in violations of the plaintiff's constitutional rights. (Complaint at ¶ 68).

In Count VI, the plaintiff seeks recovery against Chief Jebb under 42 U.S.C., § 1983, claiming, again without specificity, that Chief "Jebb's failure of *(sic.)* ensuring the proper functioning of the police department and failure to ensure that all officers of the police department are properly trained to interact with members of the public, individually and in his official capacity as Police Chief," resulted in violations of the plaintiff's constitutional rights. (Complaint at ¶ 73).

In Counts, VII, VIII, IX and X, the plaintiff has asserted common law claims for assault and battery, respectively against Officers Brodeur, Dumais, McQuaid, and Brunelle.  In each of these counts, the plaintiff alleges that each defendant, "intentionally attempted to injure or commit a battery upon" the plaintiff, thus causing him harm. (Complaint at ¶ 76 - 101).

Finally, in Count XIII,[4] the plaintiff has asserted against Officers Brodeur, Dumais, McQuaid, and Brunelle, common law claims for "Assault and Battery and Intentional Infliction of Emotional Distress."[5]  In connection with these claims, the plaintiff alleges that the officers, "both individually and collectively, engaged in acts which represented extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress" to the plaintiff. (Complaint at ¶ 103).

---

[4]   There were no Counts XI or XII included.

[5]   The reference to Assault and Battery is apparently a typographical error as there is no cognizable dual or combined claim for both Assault and Battery and Intentional Infliction of Emotional Distress.

### 4.   Rule 12(b)(6) Standard.

When a motion under Rule 12(b)(6) is on the table, dismissal of "a claim for relief in any pleading" is required where the pleading fails "to state a claim upon which relief can be granted."  In assessing a Rule 12(b)(6) motion, a court must "assume the truth of all well-plead facts and give the plaintiff[ ] the benefit of all reasonable inferences therefrom." *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010).  To withstand the analytic test, the plaintiff must establish that its allegations raise a plausible basis for a fact finder to conclude that the defendants are legally responsible for the claims at issue. *Id.*  The complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  Rule 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* Consequently, in assessing whether the plaintiff has asserted a cause of action, a court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

In considering the defendants' motion to dismiss, the court disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor. *Galvin v. U.S. Bank, N.A.,* 852 F.3d 146, 155 (1st Cir. 2017). To avoid dismissal, the complaint must allege sufficient facts to support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).  Thus, to satisfy the "plausibility standard," the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"The plausibility standard invites a two-step pavane." *A.G. ex rel. Maddox v. Elsevier*, *Inc.,* 732 F.3d 77, 80 (1st Cir. 2013) (*citing Grajales v. Puerto Rico Ports Auth*., 682 F.3d 40, 45 (1st Cir. 201)). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (quoting *Morales-Cruz v. Univ. of P.R.,* 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting *Morales-Cruz*, 676 F.3d at 224).

On this point, there is no plausible allegation or averment that any landlord tenant relationship that may or may not exist had any impact upon or relevance to the condominium assessment at issue.

5.  *Argument.*

a.  *The Official Capacity Claims are Inappropriate and Should be Dismissed.*

All of the claims asserted by the plaintiff against Chief Jebb and against Officers

Brodeur, Dumais, McQuaid are made against them in their individual and official

capacities. (Complaint at ¶ 5, 7).  As to the official capacity claims, these claims are

redundant since they are actually claims against the municipality itself. *See Opalenik v.*

*LaBrie*, 945 F.Supp.2d 168, 180 (D.Mass. 2013) (treating official capacity claims against

individual officers as redundant of claims against municipalities) (citation omitted); *see*

*also Murphy v. Town of Natick*, 516 F.Supp.2d 153, 158 (D.Mass. 2007) (under state and

federal law, an official capacity suit against a police chief is a suit against the

municipality itself).

"When a municipality is sued directly, claims against municipal employees in

their official capacities are redundant and may be dismissed." *Diaz-Garcia v. Surillo-*

*Ruiz,* 2014 WL 4403363 at *5 (D.P.R. Sept. 8, 2014). See *Trafford v. City of Westbrook,*

256 F.R.D. 31, 33 (D. Me. 2009) (explaining how "an official capacity claim is not

necessary when a Section 1983 claim is brought against a *municipality*"); *Kentucky v.*

*Graham*, 473 U.S. 159, 167 n.14 (1985) (explaining that "[t]here is no longer a need to

bring official-capacity actions against local government officials, for under *Monell*, local

government units can be sued directly for damages and injunctive or declaratory relief").

The plaintiff's official capacity claims are not simply cognizable under § 1983.

*Pierre v. Cristello,* 2017 WL 4768006, at *3 (D. Mass. Oct. 3, 2017); See also, *Dew v.*

*City of Bos.,* 405 F. Supp. 3d 297, 301 (D. Mass. 2019) ("[A] state official acting in his

official capacity cannot be sued for damages in a Section 1983 action." citing *Rafferty v. Cranston Pub. Sch. Comm.,* 315 F.3d 21, 28 (1st Cir. 2002).   The plaintiff cannot show that the relief he seeks on his official capacity claims against the individual defendants is any different from the relief he may obtain on his corresponding § 1983 claims against the City of Chicopee. Thus, the official capacity claims against Chief Jebb and against Officers Brodeur, Dumais, McQuaid are duplicative, are not actionable and should be dismissed.

   *b.  The Plaintiff has not Articulated Plausible Claims for Civil Conspiracy.*

  In Count II, the plaintiff seeks recovery under 42 U.S.C., § 1983 for a civil conspiracy, claiming that Officers Brodeur, Dumais, McQuaid and Brunelle, and Chief Jebb, "conspired among themselves to violate Plaintiffs rights under the constitution of the United States and Massachusetts. The plaintiff alleges that "[i]n furtherance of this conspiracy and cover-up, Defendants distorted facts, lied about the events that took place, and created charges against Plaintiff that would assist them in covering up the deprivation of constitutionally recognized rights afforded to every United States Citizen." (Complaint at ¶ 54).

  In essence, proof of a civil rights conspiracy claim under § 1983 requires an agreement between wrongdoers to deprive an individual of a federally-secured right, resulting in damages. "A civil rights conspiracy [is] commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results

in damages.'" *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir.2008)

(quoting *Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir.1988)). As significantly, "[t]o

demonstrate conspiracy under § 1983, [the] plaintiff must show 'an actual abridgement of

some federally-secured right.'" *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 14 (1st

Cir.2003) (quoting *Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir.2001)).

      Although "conspiracy is a matter of inference," the plaintiff is nonetheless

required to present facts to establish an agreement between the conspirators. *Estate of

Bennett*, 548 F.3d at 178. Here, there is no direct averment of the necessary agreement.

There is only the general allegation that the officers "conspired among themselves".  This

is a quintessential example of a facially insufficient "pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action [that simply]

will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      The complaint alleges that the officers each used a degree of excessive force, but

the plaintiff does not allege that they had a prior agreement to do so. Further, while the

complaint alleges that the officers "distorted facts, lied about the events that took place,

and created charges against Plaintiff", there is no specification of the distorted facts, lies

and created charges.  Neither is there any specification of how, when, or where an

agreement to accomplish these purposes was made by the officers.  Defendants

      Even assuming for analysis that a sufficient agreement may be inferred from the

plaintiff's direct averments, the conspiracy claim is still not viable. The facts alleged by

the plaintiff show only a "cover-up" claim, *viz.*, a conspiracy to cover up a past violations

of a constitutional right. "For such a claim to be successful, the cover-up must result in an

11

independent constitutional violation—such as interfering with a plaintiff's ability to seek judicial redress." *Watson* v. *Perez*, 168 F. Supp. 3d 365, 372–73 (D. Mass. 2016) citing *Thore v. Howe*, 466 F.3d 173, 179 (1st Cir.2006); *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980); *Correia v. Town of Framingham*, 969 F.Supp.2d 89, 98 (D.Mass.2013); *Shea v. Porter*, No. CIV.A. 08–12148–FDS, 2013 WL 1339671, at *5 (D.Mass. Mar. 29, 2013); *Gonsalves v. City of New Bedford*, 939 F.Supp. 921, 925–27 (D.Mass.1996).  In the final analysis, and because the plaintiff has not alleged that any specific and cognizable constitutional deprivation resulted from the defendants allegedly conspiratorial actions, the § 1983 "cover up" and conspiracy claims and not sufficiently pled and should be dismissed.

> c.  *The Plaintiff has not Asserted Plausible § 1983 Claims Against Chief Jebb.*

In Count I, the plaintiff seeks recovery against Chief Jebb under § 1983, claiming that his unspecified "actions and inactions were done deliberately, recklessly, and with callous indifference to the constitutional rights of others." (Complaint at ¶ 50).  In Count III, the plaintiff seeks recovery against Chief Jebb under § 1983, claiming, again without specificity, that "by his action, inaction, and deliberate indifference" Chief Jebb "knowingly, willfully, and intentionally allowed a policy and custom to exist" which resulted in violation of the plaintiff's constitutional rights.  (Complaint at ¶ 58). The plaintiff also alleges that prior to the arrest in question, Chief Jebb "failed to properly train Defendants Brodeur, Dumais, McQuaid, and Brunelle."  (Complaint at ¶ 61).  In Count VI, the plaintiff seeks recovery against Chief Jebb under § 1983, claiming, again without specificity, that Chief "Jebb's failure of *(sic.)* ensuring the proper functioning of

the police department and failure to ensure that all officers of the police department are properly trained to interact with members of the public, individually and in his official capacity as Police Chief," resulted in violations of the plaintiff's constitutional rights. (Complaint at ¶ 73).

Chief Jebb, as a supervisor, is not liable under § 1983 for the actions of a subordinate on a *respondeat superior* basis. See *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). Rather, the supervisor is liable for the subordinate's actions if the subordinate's behavior led to a constitutional violation and if "the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 176–77 (1st Cir. 2008) (brackets omitted) (quoting *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)

For supervisory liability to attach, the plaintiff must show an affirmative link between the constitutional violation and the supervisor's actions and omissions, "whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999). Stated differently, under § 1983, a supervisory official may be held liable for the behavior of his subordinates only if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.

*Pineda v. Toomey,* 533 F.3d 50, 54 (1st Cir. 2008) (internal citations and quotations omitted).

"The requirement of an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.' " *Id.* (quoting *Hegarty v. Somerset County,* 53 F.3d 1367, 1380 (1st Cir. 1995)). The supervisor's behavior must amount to "supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* A finding of deliberate indifference requires a showing that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Id.* (quoting *Hegarty*, 53 F.3d at 1380).  Such indifference by a supervisor can be shown if the supervisor had actual knowledge of or was willfully blind to the alleged constitutional violations. See *Feliciano-Hernandez v. Pereira-Castillo,* 663 F.3d 527, 535 (1st Cir. 2011); *Camilo-Robles v. Hoyos,* 151 F.3d 1, 6-7 (1st Cir. 1998). Isolated instances of unconstitutional activity are ordinarily insufficient to show deliberate indifference. *Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 582 (1st Cir. 1994).

Plaintiff has not alleged facts to suggest that Chief Jebb directed the conduct about which the plaintiff complains, or that the Chief encouraged, condoned, acquiesced in, or demonstrated deliberate indifference to the conduct.  For these reasons, the supervisory liability claims against Chief Jebb must be dismissed.  Moreover, there are no specific allegations that support the naked conclusion that Chief Jebb acted with "deliberate indifference" in supervising the officers who allegedly used excessive force. There are no

allegations which state or suggest that Chief Jebb had actual knowledge of or was willfully blind to specific prior alleged constitutional violations.  Stripped of impermissible labels and bare legal conclusions, the plaintiff's complaint is essentially that Jebb was the chief of police at the time of the operative events.  This is woefully insufficient pleading, and the claims against Chief Jebb must therefore be dismissed.

      *d.   The Plaintiff has not Alleged Plausible* Monell *Claims against Chicopee.*

A municipality may be liable to those subjected to the deprivation of a constitutional right by a municipal officer if the deprivation is shown to be the product of a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("We [hold] that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")  Section 1983 provides relief to any person whose constitutional rights are violated by a state actor. See *Monell* at  692. But a municipality cannot be held liable for damages for the acts of individual municipal employees on a theory of *respondeat superior*. Id. at 691. Liability can exist only "where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95).

The plaintiff, seeking damages against Chicopee, must show that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's]

officers" or is "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. Therefore, "a municipality may be liable under § 1983 only where a custom or practice is so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.' " *Bisbal-Ramos v. City of Mayaguez,* 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden,* 130 F.3d 26, 31 (1st Cir. 1997)). Stated differently, the policy or custom must be the "cause and moving force behind the deprivation of constitutional rights." *Bisbal-Ramos*, 467 F.3d at 24.

With respect to the plaintiff's failure to train claims, in limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson,* 563 U.S. 51, 61 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. (quoting *Canton,* 489 U.S. at 388-89. " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 563 U.S. at 61 (quoting *County Commr's of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). A plaintiff can prove deliberate indifference through a pattern of

16

similar constitutional violations by untrained employees, but a pattern might not be necessary "in a narrow range of circumstances," *Bryan Cty.*, 520 U.S. at 409, such as those where "the unconstitutional consequences of failing to train could be so patently obvious." *Connick,* 563 U.S. at 64 (citing *Canton* where the Court considered the failure to train armed police officers in the constitutional limitation on the use of deadly force to be so predictable that it would reflect the city's deliberate indifference to a citizen's constitutional rights).

"When evaluating a municipal liability claim that requires proof of deliberate indifference, the plaintiff must plead more than a 'mere insufficiency' of the municipality's actions." *Tortorello v. Laconia Police Dep't,* No. 19-CV-250-PB, 2020 WL 2404859, at *2 (D.N.H. May 12, 2020) (quoting *Marrero-Rodríguez v. Municipality of San Juan,* 677 F.3d 497, 503 (1st Cir. 2012)). "Instead, 'a training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing.' " *Id.* (quoting Marrero-Rodriguez, 677 F.3d at 503).  See also Nevins v. Mancini, No. CIV. 91-119-M, 1993 WL 764212, at *3 (D.N.H. Sept. 3, 1993) ("Generally, a failure to supervise only gives rise to § 1983 liability 'in those situations where there is a history of widespread abuse[,][o]nly then may knowledge be imputed to the supervisory personnel.' ") (citing *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983)).

Plaintiffs' failure to train and supervise claim falls far short of meeting those requirements. The plaintiffs' claim is comprised entirely of conclusory allegations.

Conspicuously absent are any underlying factual allegations that support plaintiffs' legal conclusions. Plaintiffs fail to provide any details regarding defendant's training program, or how that program might be even arguably deficient. Nor does the complaint allege any facts from which the court might infer that either Chief Jebb or Chicopee disregarded a known risk or adhered to an official custom or practice.

In this case, the plaintiff alleged no specific facts that would support a plausible inference that the alleged excessive force employed by the defendant officers was the product of or in accordance with an official policy or custom of the City of Chicopee or Chief Jebb, or resulted from their deliberate indifference. For these reasons, the *Monell* claims set forth against the City of Chicopee and Chief Jebb should be dismissed.

### 6. Conclusion.

For all of these reasons, the defendants, City of Chicopee, its Police Chief, William Jebb, and its police officers Timothy Brodeur, Mickey Dumais and Frank McQuaid, respectfully request, pursuant to Fed. R. Civ. P. 12(b)(6), that the court dismiss the claims asserted against them as set forth above.

Dated:  February 9, 2021               THE DEFENDANTS,
City of Chicopee,
William Jebb, Timothy Brodeur,
Mickey Dumais and Frank McQuaid,

*/s/ Mark J. Albano*

By:_____
Mark J. Albano, Esq.
ALBANO LAW, LLC
One Monarch Place, Suite 1330
Springfield, MA  01144-1150
Tel.: (413) 736-3500
Fax.: (413) 746-9224
B.B.O. No.:  013860
email: mark@albanolawllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2021, this document filed through the Electronic Case Filing System (ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that a paper copy shall be served upon those identified as nonregistered participants.

*/s/ Mark J. Albano*
_____
Mark J. Albano, Esq.