# Exhibit 4

Pages 1-106
Exhibits 1-6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:20-CV-30177-MGM

REY AUGUSTINE, JR.,
Plaintiff,

v.

CITY OF CHICOPEE, ET AL.,
Defendants.

VIDEOCONFERENCE DEPOSITION OF

REY L. AUGUSTINE, JR.

TAKEN SEPTEMBER 29, 2023

AT THE LAW OFFICES OF

TIMOTHY M. KOTFILA

ONE MONARCH PLACE - SUITE 1220

SPRINGFIELD, MASSACHUSETTS

Reporter: Raymond F. Catuogno, Jr.

understood?

A. Yes, sir.

Q. If you need to take a break for whatever reason, let me know that and we'll certainly accommodate you. I would only ask that before we suspend for the break you answer whatever question is pending in the deposition, understood?

A. Yes.

Q. What is your date of birth?

A. January 27, 1984.

Q. So I'm not a mathematician, but does that make you 39 as you sit there today?

A. That is correct.

Q. Are you presently on any prescription drugs or medication that would affect your ability to remember or respond to the questions?

A. No, sir.

Q. Are you on any prescription drugs or medications today?

A. Yes, sir.

Q. What are they?

A. Prescribed medications that I take

daily, paroxetine.

Q. Do you know what dosage you take?

A. 60 milligrams daily.

Q. And what condition does that drug help you with?

A. I believe it's depression and/or anxiety.

Q. How long have you been taking that drug?

A. Quite some time. It may have been a different drug in the past. I don't know -- it's been paroxetine for quite a while, but I have been taking it for several years.

Q. Okay. More than ten years?

A. Again, it was not always paroxetine, but it was something relatable to it, or paroxetine. But yes, more than ten years.

Q. So for more than ten years you have been taking paroxetine or a similar drug for your condition that you have identified as depression and/or anxiety, correct?

A. Correct.

Q. When were you first diagnosed with

that condition?

A. I'm not sure.

Q. All right. What is your height and weight?

A. I'm six foot three. My weight, I'm not sure. So I would be estimating, or guessing.

Q. Well, that is a good point, and I didn't mention it at the outset and I should have. So today, as you know you're under oath. And you have sworn to tell the truth and recite the facts as you believe them to be.

A. Yes.

Q. You're not -- certainly we would discourage you from guessing.

A. Okay.

Q. But not everything is knowable to certainty, so if you have a reasonable estimation or understanding, it's fair to provide that. So, for instance, with your weight, if you were once 210 and at other times 220 or 230, it would be fair to say, and I don't want to put words in your mouth, my weight is between 210 and 230, I don't know what it is

your deposition today, other than Attorney Kotfila?

A. That is correct.

Q. As you sit here, or there as the case may be, do you know Officer Timothy Brodeur, one of the defendants you sued in this case?

A. I do not know him personally would be my answer.

Q. Okay. So you have not had any interactions with him either prior to or after November 16, 2017?

A. I don't believe so, no.

Q. And is the same true with respect to Officer Micky Dumais?

A. Yes.

Q. And is the same true with respect to now retired Officer Francis McQuaid?

A. Yes.

Q. So prior to the date of this incident, November 16, 2017, and rather than repeating the date I will refer to that as the incident or the date of the incident. You never had any reason to become involved with any of

Q. Sure. Have you made or given any statements to anyone concerning the incident prior to today?

A. Certainly nothing official. Other than that, I don't know.

Q. What do you mean by official? Do you mean in terms of giving a statement to a governmental official?

A. That or something I signed to.

Q. Okay.

A. I mean -- I guess I mean other than if it was just brought up in a conversation that was just between me and somebody else, not on -- on official.

Q. Not actually recorded. Is that what you're saying?

A. Yes, more or less.

Q. All right. Are you married?

A. No.

Q. Have you ever been married?

A. No.

Q. Do you have any children?

A. No.

Q. How long have you lived at your

will help you remember. But is it fair to say that you lived in various places over the past ten years while intermittently returning to your mom's home in South Deerfield on Lee Road?

A. Yes.

Q. How old is your mother?

A. I'm not sure exactly. She is approximately early seventies.

Q. Okay. And does she have --

A. Possibly late sixties. I'm sorry, I'm not sure.

Q. That is okay. You're trying your best, and I appreciate it. Does she have any other children other than your brother Kyle?

A. No.

Q. Does anyone else live at 32 Lee Road in South Deerfield right today?

A. Yes, my father lives there.

Q. And that is Rey Augustine Sr.?

A. Yes.

Q. And your mom and dad are still married?

A. I believe so.

Q. And how long have they lived on Lee

minutes ago. That was very brief. That actually may have actually been my first job, but it didn't really last. I can't remember if I worked there a few hours and then they said we don't need you. Whatever. You know, I can't remember. I just remember that I did talk to someone about a job there.

Q. Can you remember as you sit here today, any other jobs that you may have worked from 2003 to the present, beyond those jobs that we have talked about?

A. I have done a few jobs through Labor Ready, a temp agency in Greenfield. I'm not sure they are still there. In the past -- those are -- most of those were either one day temp jobs or a week. And other than that, nothing is coming to mind. I think there were others, but I can't remember as of this moment.

Q. Is it fair to say that you have not had a full-time steady job for more than three or four months in the past twenty years?

A. I don't think so. I think I have held a job longer than three or four months.

Q. What is the longest you have held a

job in the past twenty years?

A. I'm not sure.

Q. I'm going a little out of order here. Do you have a driver's license today?

A. I do not.

Q. And why don't you have a license to drive?

A. Long time ago it was -- I'm not sure what the technical -- I was charged with something. I don't remember the exact charges. My driver's license was taken, and I was acquitted of those charges and/or they were dropped, but in Massachusetts law they still hold your driver's license and make you pay the money to get it back even if you're acquitted of the crime you were charged with. So I never bothered to get it back to this point because I don't have a car. But recently, I have been looking into it. And I went to the RMV. All I have to do is pay the money to get my license, I believe. And I recently went to the RMV, and they gave me a bar code to scan to take the next step to talk to someone about getting it back.

Q. Okay. How long have you not had a

license?

A. I don't know. I cannot say a precise number of years. But it's been years, I can say that. I don't know how many.

Q. Okay. Has it been more than ten years?

A. I think so.

Q. I'm going to return to Exhibit 2, which is the Complaint you filed in this case. And that Complaint has certain numbered allegations that you or your attorney have made in connection with your claims against my clients, the defendant officers in this case. And I would like to go over those with you to determine whether those allegations are true. First is Number 9. If you could, could you read that paragraph number 9?

A. Sure. "In 2017, Rey Augustine Sr. and his son, plaintiff, resided at 735 Memorial Drive, lot #28, Harmony Homes in Chicopee, Massachusetts."

Q. And you are designated as the plaintiff in this document. Is that statement true?

Q. Because in Paragraph 12 -- well, let me ask you if this is true, to better care for him after the surgery, Mr. Augustine, Sr. moved back in with Beruta Augustine at 32 Lee Road in South Deerfield; is that correct?
A. Yes.
Q. And as a result, you were living alone at 735 Memorial Drive, lot 28, after your dad moved back in with your mom?
A. Yes.
Q. On the date of this incident, November 16, 2017, you were living at 735 Memorial Drive, lot 28 alone, correct?
A. Yes.
Q. And tell me, is that a house or a multifamily structure? What is it?
A. It's a mobile home.
Q. And did your dad own that mobile home?
A. Yes.
Q. Was that the first time you had lived at that mobile home?
A. Yes.
Q. Were you familiar with that area on

November 16, 2017?
A. Yes.
Q. So back on that date, do you recall whether you were working or not?
A. I don't believe I was working.
Q. The next allegation, paragraph 14, quote, "On or about November 16, 2017, plaintiff went down the street to the Hu Ke Lau, which was located at 705 Memorial Drive in Chicopee," close quote. Is that true?
A. Yes.
Q. And the next allegation is paragraph 15, where it's stated, quote, "While at the Hu Ke Lau, plaintiff was involved in a physical altercation with two patrons, William Hose and Michael MacKay." Is that true?
A. That I don't recall.
Q. So you don't recall if you were involved in a physical altercation with two patrons at the Hu Ke Lau?
A. Correct.
Q. Do you recall anything about being at the Hu Ke Lau on the evening of November 16, 2017?

A. Yes.
Q. Is it true that you may have been taking prescription medication during that 24-hour period?
A. Yes. And I most likely was.
Q. And what medication were you taking on that date?
A. Probably paroxetine.
Q. And that is what you mentioned before for depression and anxiety?
A. Yes.
Q. Were you taking any other medications on that date?
A. Probably Trileptal, or the generic oxcarbazepine.
Q. What is that medication for?
A. Depression, anxiety, I believe.
Q. And you may have been -- you believe you were taking that on November 16, 2017?
A. Yes.
Q. Any other medications that you believe you were taking on that date?
A. I don't think so.